UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARISSA ARAUJO (SURVIVAL ACTION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT; THE COUNTY OF IMPERIAL; JOSUE GONZALEZ; and DOES 1 TO 25, inclusive,<br><br>Defendants.<br>―――――――――――――――――<br>COACHELLA VALLEY WATER DISTRICT,<br><br>Cross-Complainant,<br><br>v.<br><br>ANDRE DOS-SANTOS DE-SA, an individual; COUNTY OF IMPERIAL, a Public Entity; and DOES 1-10, inclusive,<br><br>Cross-Defendants. | Case No.: 20-cv-01800-AJB-RBM<br><br>**ORDER DENYING DEFENDANT COUNTY OF IMPERIAL'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. No. 59)** |

Presently before the Court is Defendant County of Imperial's (the "County") motion for summary judgment. (Doc. No. 59.) This motion is suitable for determination

1

on the papers and without oral argument in accordance with Civil Local Rule 7.1.d.1. Accordingly, the motion hearing scheduled for January 27, 2022, is hereby vacated. Upon consideration of the motion and the parties' arguments in support and opposition, the County's motion for summary judgment is **DENIED**.

I.     BACKGROUND

This action arises out of a tragic accident that occurred in unincorporated Imperial County. (Doc. No. 81 at 7.) On October 2, 2019, Third-Party Defendant Andre Dos-Santos De-Sa was driving a Hyundai Elantra when he, along with Plaintiffs Larissa Araujo and Andressa Dos Santos, were involved in a two-car, broadside collision with a van driven by Defendant Josue Gonzalez, an employee of Defendant Coachella Valley Water District. (*Id.*) The automobile accident resulted in the death of two decedents, Larissa Araujo and Andressa Dos Santos. (*Id.*)

The accident occurred at approximately 12:30 p.m., during clear, sunny, dry weather. (Doc. No. 59-1 at 5.) At the time of the collision, Defendant Gonzalez was driving a Ford E350 Super Duty van southbound on English Road, while Plaintiffs were heading westbound on Schrimpf Road. (Doc. No. 81 at 7.) Where these two roads intersect, both English Road and Schrimpf Road are unpaved, graded dirt roads. (*Id.* at 8.) There were no stop signs or other traffic controls to indicate an intersection was approaching. (*Id.*) Thus, English Road and Schrimpf Road were two perpendicular roads that intersected without any controls regulating cross-traffic. (*Id.*) At the time of the collision, there were no posted speed limit signs at this intersection. (*Id.*) Thus, pursuant to California Vehicle Code § 22349(b), the speed limit was 55 mph. (*Id.*)

Approximately 73 feet northeast of the intersection, there is a dirt berm approximately five feet high. (Doc. No. 59-1 at 11; Doc. No. 81 at 8.) While Mr. De-Sa was driving west on Schrimpf, the dirt berm was to his right/north, while the berm was to Defendant Gonzalez's left/east as he drove south. (Doc. No. 81 at 9.) In 2014, this berm was designed and constructed by Imperial Irrigation District ("IID") as part of its Managed Marsh Complex, Phase 2. (Doc. No. 59-1 at 8.)

In the 5 seconds before the collision, Mr. De-Sa's Hyundai was traveling at 56 mph. (*Id.* at 6.) From 4 to 2 seconds before the collision, the Hyundai slowed from 55 mph to 47 mph. (*Id.*) Then, in the 1.5 seconds to 1 second before the collision, the Hyundai was traveling 46 mph. (*Id.* at 7.) In the last half-second before the collision, the Hyundai slowed from 42 mph to 37 mph. (*Id.*) Meanwhile, Defendant Gonzalez's Ford maintained a constant speed between 59.0 and 60.9 mph and never slowed or activated its brakes before the collision. (*Id.*) Mr. De-Sa's Hyundai entered the intersection first and was thereafter hit by Defendant Gonzalez's Ford. (*Id.*)

The remaining claim against the County is Count I for wrongful death. On October 15, 2021, the County filed the instant motion for summary judgment. (Doc. No. 59.) Plaintiffs opposed (Doc. No. 81), and the County replied (Doc. No. 83). This order follows.

## II.   LEGAL STANDARD

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the

movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks, alterations, and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1159 (C.D. Cal. 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a motion for summary judgment may not be defeated by evidence that is "merely colorable, or is not significantly probative . . . ." *See Anderson*, 477 U.S. at 249–50 (citations omitted); *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

///

## III. EVIDENTIARY OBJECTIONS

For a motion for summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial . . . ." *See Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). "Rule 56[(c)] requires only that evidence '*would* be admissible', not that it presently *be* admissible." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006). Thus, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez-Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (same). And while a court will consider a party's evidentiary objections to a motion for summary judgment, "[o]bjections such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself." *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146 L BLM, 2014 WL 1286561, at *16–17 (S.D. Cal. Mar. 31, 2014) (citing *Burch*, 433 F. Supp. 2d at 1119–20).

Plaintiffs lodge evidentiary objections to the County's evidence submitted in support of its motion for summary judgment. Each of Plaintiffs' objections is based upon lack of foundation, speculation, and hearsay. Moreover, insofar as the Court's decision does not depend on certain disputed evidence in this order, the Court need not reach those remaining evidentiary objections. As such, the Court **OVERRULES** Plaintiffs' objections.

## IV. DISCUSSION

The County moves for summary judgment on Plaintiffs' wrongful death claim. (Doc. No. 59.) Plaintiffs sue the County for wrongful death based on a "dangerous condition" theory. (Doc. No. 1 ¶¶ 41–44.) Specifically, Plaintiffs allege the uncontrolled intersection in which the two vehicles collided was maintained by the County and in a dangerous condition. (Doc. No. 81 at 14.)

A public entity is liable under California Government Code § 835 if the plaintiff

establishes: (1) the public property was in a dangerous condition at the time of the injury; (2) the injury was proximately caused by the dangerous condition; (3) the kind of injury that occurred was reasonably foreseeable as a consequence of the dangerous condition; and *either* (4)(a) the dangerous condition was created by a public employee's negligent or wrongful act within the scope of their employment, *or* (b) the entity had actual or constructive notice of the dangerous condition under § 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition. Cal. Gov't Code § 835. Here, it is undisputed the alleged dangerous condition was designed and constructed by IID, rather than the County. (Doc. No. 59-1 at 13.)

In the County's motion, it asserts (1) the roadways were not in a dangerous condition, (2) the accident was not caused by a dangerous condition, and (3) the County did not have notice of the alleged dangerous condition.

### A.     Dangerous Condition

The County argues the Court should grant summary judgment against Plaintiffs because the intersection was not in a dangerous condition as it did not pose a substantial risk of injury when the County's roadways were used with due care. (Doc. No. 59-1 at 10.)

A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Cal. Gov. Code § 830(a). "Whether a condition creates a substantial risk of harm depends on how the general public would use the property exercising due care" and is determined under an objective standard. *Schonfeldt v. State*, 61 Cal. App. 4th 1462, 1466 (1998). The California Supreme Court has held that "[t]he existence of a dangerous condition is ordinarily a question of fact . . . but it can be decided as a matter of law if reasonable minds can come to only one conclusion." *Bonanno v. Cent. Contra Costa Transit Auth.*, 30 Cal. 4th 139, 148 (2003).

The County first asserts the berm caused—at most—only a partial obstruction of

1 the drivers' lines of sight, and thus the intersection was not in a dangerous condition.
2 (Doc. No. 59-1 at 11.) Rather, the County asserts the two drivers were negligent in not
3 seeing the other vehicle approaching the intersection. (*Id.* at 12.) In support of its
4 contention, the County argues neither Defendant Gonzalez nor De-Sa testified that his
5 view of oncoming traffic was blocked by the berm. (*Id.* at 11–12.) "Rather, when
6 Gonzalez and De-Sa were asked to clarify whether they *could not* see the other vehicle or
7 they *did not* see the other vehicle, each of them testified that he simply *did not* see the
8 other vehicle." (*Id.* at 12 (citing County Gonzalez Deposition ("Depo."), Doc. No. 59-2,
9 at 138–39).) However, while "[t]he negligence of a plaintiff-user of public property . . . is
10 a defense which may be asserted by a public entity[,] it has no bearing upon the
11 determination of a 'dangerous condition' in the first instance." *Fredette v. City of Long*
12 *Beach*, 187 Cal. App. 3d 122, 131 (1986); *Cole v. Town of Los Gatos*, 205 Cal. App. 4th
13 749, 768 (2012) ("The status of a condition as 'dangerous' for purposes of the statutory
14 definition does *not* depend on whether the plaintiff or other persons were actually
15 exercising due care but on whether the condition of the property posed a substantial risk
16 of injury to persons who *were* exercising due care.") Thus, whether Defendant Gonzalez
17 or De-Sa were using due care is irrelevant to the issue of whether the intersection was in
18 a dangerous condition.

19       The County next argues the intersection was not in a dangerous condition because
20 the berm "did not completely block either driver's view of the other vehicle, at any
21 point." (Doc. No. 59-1 at 11.) The County further contends the berm did not cause any
22 visual obstruction in the final 100 feet of each driver's approach to the intersection, and
23 thus the berm was irrelevant as the vehicles entered the intersection. (*Id.*) The County
24 offers testimony from Officer Farber, who testified that based upon his visibility analysis,
25 the berm did not completely block either driver's view of the other vehicle at any point.
26 (Doc. No. 59-1 at 11; County Farber Depo., Doc. No. 59-2, at 21.) Additionally, Officer
27 Farber testified the berm did not cause any sightline obstruction in the final 100 feet
28 before the vehicles entered the intersection. (Doc. No. 59-1 at 11; County Farber Depo.

at 21.) However, Plaintiffs argue they have offered substantial evidence that the intersection was in a dangerous condition at the time of the collision. (Doc. No. 81 at 16.) For instance, Plaintiffs' expert traffic engineer Mr. Reza Marshal stated the berm created a visual obstruction for vehicles traveling southbound and westbound approaching the intersection, as Gonzalez and De-Sa did. (Plaintiffs ("Pl.") Marshal Declaration ("Decl."), Doc. No. 81-7, ¶ 7(a)(viii).) Mr. Marshal further states that although the intersection was unobstructed by the berm for the final 150 feet before the drivers entered the intersection, the subject intersection requires a sight distance of 285 feet for a speed limit of 55 mph, as was the speed limit here. (*Id.* at ¶ 7(a)(viii)–(ix); Doc. No. 81 at 16.) Plaintiffs provide further testimony from experts which show that at 55 mph, a driver travels 150 feet in 1.8 seconds. (Doc. No. 81 at 19.) Thus, with only 150 feet of sight distance after the berm, the drivers would have had merely 1.8 seconds to perceive, react, and implement an evasive maneuver to cross-traffic. (*Id.*)

Moreover, Plaintiffs maintain that Officer Farber's testimony regarding visibility in the final 100 feet before the intersection did not pertain to whether the intersection was safe, but rather to determine the speed limit under the California Vehicle Code. (*Id.* at 21.) Specifically, Officer Farber testified he looked at the final 100 feet of the approach to the intersection because "if there is any obstruction in the view of drivers approaching an intersection in the last hundred feet, state law would indicate the speed limit would drop to 15 miles an hour." (Pl. Farber Depo., Doc. No. 81-3, at 16.) As such, Plaintiffs assert that contrary to the County's argument that Officer Farber's finding rendered the intersection safe, Officer Farber's study merely determined the speed limit for the area. (Doc. No. 81 at 22.)

Based on the foregoing, the Court concludes there are triable issues of fact concerning whether the intersection was in a dangerous condition. Because there are material facts in dispute, summary judgment is inappropriate as to whether a dangerous condition existed at the time of the collision.

///

### B. Causation

The County next asserts the injury was not proximately caused by a dangerous condition because the roadway was used in a "sufficiently abnormal manner"—here, Defendant Gonzalez driving 4 to 6 mph over the speed limit in the 5 seconds leading to the collision. (Doc. No. 59-1 at 10.) Specifically, the County argues the partial sightline obstruction did not cause the subject accident, but rather, that had Gonzalez driven at the statutory maximum speed for the 5 seconds prior to the accident, the accident would not have occurred. (*Id.*) In support of its contention, the County asserts the roadways were not used with "due care" under Government Code § 830 at the time of the accident. (Doc. No. 59-1 at 10). The County points to *Fuller v. State*, 51 Cal. App. 3d 926, 940 (1975), which held "[a]ny property can be dangerous if used in a sufficiently abnormal manner." (Alteration in original). However, "whether a dangerous condition exists—that is, whether a condition of public property 'creates a substantial . . . risk of injury when used with due care in a manner in which it is reasonably foreseeable that it will be used' (§ 830(a))—is a separate question from whether 'the injury was proximately caused by the dangerous condition' (§ 835)." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099, 1106 (2015). Moreover, as discussed above, "[t]he status of a condition as 'dangerous' for purposes of the statutory definition does *not* depend on whether the plaintiff or other persons were actually exercising due care but on whether the condition of the property posed a substantial risk of injury to persons who *were* exercising due care." *Cole*, 205 Cal. App. 4th at 768.

Generally, "causation . . . is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." *Nichols v. Keller*, 15 Cal. App. 4th 1672, 1687 (1993); *see also Lombardo v. Huysentruyt*, 91 Cal. App. 4th 656, 666 (2001); *Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, No. 18cv1927 JM (MSB), 2021 WL 4895977, at *17 (S.D. Cal. Oct. 20, 2021). Section 835 requires a plaintiff to show that the public entity's property was

"in a dangerous condition at the time of the injury" and that "the injury was proximately caused by the dangerous condition." Thus, Plaintiffs must show the alleged dangerous condition proximately caused the fatal injuries their decedents suffered as a result of the collision with Defendant Gonzalez's vehicle. *See Cordova*, 61 Cal. 4th at 1106.

Here, Plaintiffs have alleged that both the County and Defendant Gonzalez were substantial factors in causing their harm, and that the County cannot escape liability merely because Gonzalez may also have been negligent in speeding. (Doc. No. 81 at 25.) Plaintiff cites *Cole*, which reiterates that "it is entirely possible for an injury to result from multiple tortious acts or omissions, in which case all authors of the injurious conduct may be liable, provided the conduct of each satisfies the test of proximate or legal cause as that concept has evolved over the centuries." *Cole*, 205 Cal. App. 4th at 769. The court further stated, "the conduct of a third party will not bar liability unless it operated as a superseding or supervening cause, so as to break the chain of legal causation between the defendant's conduct and the plaintiff's injuries." *Id.* at 770. In *Cole*, the court reversed summary judgment where a pedestrian sued a drunk driver and a public entity, alleging a dangerous condition also caused her injuries. *Id.* at 769. The court held that foreseeable actions by a third party, such as intoxicated driving, is not a superseding or supervening cause as a matter of law. *Id.* at 771. Here, the Court does not find that driving 5 mph over the maximum speed limit to be a superseding or supervening cause so as to break the chain of legal causation.

Plaintiffs have further provided sufficient evidence that the subject intersection was a proximate cause of the collision. Plaintiffs have presented the testimonies of traffic engineer Mr. Marshal, accident reconstruction expert Mr. Jon Landerville, and human factors expert Ms. Ilene Zackowitz, who each testified that the County's intersection was a substantial factor in causing the collision. (Doc. No. 81 at 27.) Further, each of Plaintiffs' three experts testified the intersection was in a dangerous condition even for those driving at the speed limit and using due care. (*Id.*) For example, Mr. Landerville testified that "[w]hen traveling at [the maximum allowable speed of] 55 mph, a vehicle

would travel 150 feet in approximately 1.85 seconds. Therefore, the unobstructed sight distance [of approximately 150 feet] was found to be inadequate for successful evasive maneuvering." (Landerville Decl., Doc. No. 81-8, ¶ 17.) Further, as previously discussed, traffic engineer Mr. Marshal testified that based upon the American Association of State Highway and Transportation Officials' book "A Policy on Geometric Design of Highway and Streets," the subject intersection requires a sight distance of 285 feet for a speed limit of 55 mph. (Marshal Decl. ¶ 7(a)(ix).)

Based on the foregoing, there is a material dispute as to whether the partial visibility obstruction at the intersection was a proximate cause of the collision which occurred. As such, summary judgment is inappropriate here.

**C.  Notice**

  **1.  Actual Notice**

Government Code § 835.2(a) provides a public entity has actual notice of a dangerous condition "if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." Actual notice requires knowledge of the particular dangerous condition in question. *State v. Sup. Ct. of San Mateo Ctny.*, 263 Cal. App. 2d 396, 399 (1968). Here, the Court finds there is no triable issue of material fact as to whether the County lacked actual notice of the berm.

The County asserts it did not have actual notice because the IID, the party which designed and built the berm, never informed the County about the berm either before, during, or after construction. (Doc. No. 59-1 at 13 (citing County Fiorenza Depo., Doc. No. 59-2, at 190).) Additionally, the County argues an accident had not occurred at the subject intersection since the construction of the berm until the collision on October 2, 2019. (*Id.* at 14 (citing County Chell Depo., Doc. No. 59-2, at 147.) Lastly, the County contends no one has complained to the County that the berm was causing a sightline obstruction. (Doc. No. 83 at 5.) Thus, concludes the County, it lacked actual knowledge and would have had no reason to investigate the area or believe that the intersection was unsafe in any way. (Doc. No. 59-1 at 14.)

Plaintiffs counter the County had actual notice of the berm as early as 2008. (Doc. No. 81 at 28.) Specifically, Plaintiffs contend Frank Fiorenza, currently employed by the IID and former deputy director of the County's Public Works Department, testified that he knew of this specific berm while working for the County in 2008. (*Id.*) However, as noted by the County, Plaintiffs misstate the evidence. (Doc. No. 83 at 3.) Mr. Fiorenza testified that the Managed Marsh Project, Phase 2, which includes the subject berm at the intersection of Schrimpf and English, was built in 2014 while Mr. Fiorenza was employed by IID. (Pl. Fiorenza Depo., Doc. No. 81-11, at 5.)

Plaintiffs point to a letter signed by Mr. Fiorenza on February 4, 2008, while he was the Deputy Director of the County's Public Works Department. (Doc. No. 81 at 28.) Plaintiffs assert that in the letter, Mr. Fiorenza discussed the berm's construction. (*Id.*) However, again, Plaintiffs misstate the evidence. Rather, Mr. Fiorenza testified that his 2008 letter in response to IID's Environmental Impact Report did not pertain to any work he did regarding design and construction of the managed marsh and would not have included the design of the berm used in Phase 2. (Pl. Fiorenza Depo. at 12.) Additionally, the 2008 letter did not address any line-of-sight obstructions from these berms, and that the points in the letter were "purely based on the cost to operate, maintain roads. Actual design of that on site was not the consideration at the time[.]" (*Id.* at 15–16.)

Next, Plaintiffs assert the County had actual notice because a permit request from the County may have been required prior to building the berm. (Doc. No. 81 at 29.) However, Mr. Fiorenza testified that he was not aware of any permit applications or other plans submitted to the County that would have shown the subject berm. (Pl. Fiorenza Depo. at 13.) Additionally, the permit to which Plaintiffs point, dated September 2014, was unrelated to the subject berm, though part of the Managed Marsh Phase 2 plan generally. (*Id.*) Accordingly, the Court finds Plaintiffs have not sufficiently demonstrated that the County had actual notice of the berm's construction.

### 2. Constructive Notice

The County argues it also did not have constructive notice of the alleged dangerous

condition because the subject berm was designed and constructed by IID in 2014, only five years before the accident, and no accident had occurred at the subject intersection until the subject collision. (Doc. No. 59-1 at 14.) Thus, the County asserts, it "would have had no reason to investigate this dirt road intersection in a remote, rural area of the County." (*Id.*)

California Government Code § 835.2 provides that constructive notice exists "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." Cal. Gov't Code § 835.2(b); *Heskel v. City of San Diego*, 227 Cal. App. 4th 313, 317 (2014) ("Whether the dangerous condition was obvious and whether it existed for a sufficient period of time are threshold elements to establish a claim of constructive notice."). Whether a public entity had constructive notice is generally a question of fact for the jury to decide. *Gallipo v. City of Long Beach*, 146 Cal. App. 2d 520, 527 (1957). Here, it is undisputed that the berm was built in 2014, approximately five years before the subject collision.

As the moving party, the County fails to establish that the alleged dangerous condition "was not of such an obvious [c]haracter that it could not have been discovered and remedied in that period of time." *Anderson v. City of Thousand Oaks*, 65 Cal. App. 3d 82, 91 (1976). Based on the declarations and pictures provided by Plaintiffs, the size of the berm suggests it was readily apparent from the street. *See Heskel*, 227 Cal. App. 4th at 320. Thus, the intersection and berm which caused the allegedly dangerous condition here was visible from a public roadway for several years. Because the physical feature—the berm—which rendered the intersection unsafe was readily apparent to anyone driving at intersection, a jury could reasonably infer that the County had constructive knowledge of the alleged dangerous condition. *See Anderson*, 65 Cal. App. 3d at 91; *see also Carson v. Facilities Dev. Co.*, 36 Cal. 3d 830, 843–44 (1984).

Moreover, the County had blading operations for its unpaved roads, wherein the County attempted to blade each unpaved road between one to three times per year. (Doc.

No. 81 at 30 (citing Pl. Gay Depo., Doc. No. 81-10, at 12).) Additionally, Mr. John Gay, an employee of the County's Public Works Department, estimated the County's employees likely bladed English Road one-to-five times per year. (Gay Depo. at 28.) Thus, because the County's employees periodically drove the subject roads, including during the five years from the time the berm was built to the subject collision, it is reasonable to conclude the County had constructive notice of the "obvious nature" of the berm. Lastly, the County has failed to demonstrate that a reasonable inspection of the intersection would not have revealed the dangerous condition. *Anderson*, 65 Cal. App. 3d at 92. As such, there is a material dispute as to whether the County had constructive notice of the dangerous condition.

## V.   CONCLUSION

Based on the foregoing, the Court **DENIES** the County's motion for summary judgment. (Doc. No. 59.) The Court further confirms all pre-trial dates and deadlines as set in the Scheduling Order.

**IT IS SO ORDERED.**

Dated: January 14, 2022

Hon. Anthony J. Battaglia
United States District Judge